UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ISMAEL MORALES,                    :
      Plaintiff,              :
                       :
     v.                        :      CA 10-397 S
                       :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF                    :
SOCIAL SECURITY,                   :
      Defendant.              :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

     This matter is before the Court on the request of Plaintiff
Ismael Morales ("Plaintiff") for judicial review of the decision of
the Commissioner of Social Security ("the Commissioner"), denying
disability insurance benefits ("DIB") and Supplemental Security
Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social
Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the
Act"). Plaintiff has filed a motion to reverse the decision of the
Commissioner. See Plaintiff's Motion to Remand for a Rehearing of
the Commissioner's Final Decision (Docket ("Dkt.") #9) ("Motion to
Remand"). Defendant Michael J. Astrue ("Defendant") has filed a
motion for an order affirming the Commissioner's decision. See
Defendant's Motion for an Order Affirming the Decision of the
Commissioner (Dkt. #12) ("Motion to Affirm").

     This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §

636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.

## Facts and Travel

Plaintiff was born in 1961 and was forty-two years old as of the alleged onset date of his disability. (Record ("R.") at 19, 89, 94) He has an eighth grade education, is able to communicate in English, and has past relevant work as a press operator, a delivery person, a rug cleaner, and a plater. (R. at 19, 26-27, 28, 135)

Plaintiff filed applications for DIB and SSI on March 14, 2006, (R. at 11, 89-100), alleging disability since March 21, 2001, due to pain in his back, shoulders, left arm, right shoulder, groin, and left leg, (R. at 11, 89, 94, 129-30). The applications were denied initially, (R. at 11, 56), and on reconsideration, (R. at 11, 57), and Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), (R. at 11, 67). A hearing was held on December 18, 2007, at which Plaintiff, represented by counsel, appeared and testified. (R. at 11, 22) An impartial vocational expert ("VE") also testified. (R. at 11, 22) At the hearing, Plaintiff, through counsel, amended his alleged onset date

to January 1, 2004.  (R. at 11, 30)

On February 28, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 11-20)  Plaintiff requested review by the Appeals Council, (R. at 88, 156-59), which denied his request on July 28, 2010, (R. at 1), thereby rendering the ALJ's decision the final decision of the Commissioner, (id.).  Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed de novo, the Commissioner's findings of fact, if

supported by substantial evidence in the record,[1] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[2] be younger than 65 years of age, file an

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

[2] The ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2009. (R. at 11, 13)

application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[3] 20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[3] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2011). Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

5

(2011).[4]  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  <u>See</u> <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2011).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520(a) (2011); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy.  <u>See</u> 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  <u>See</u> <u>Seavey v. Barnhart</u>, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met ... h[is] burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs

---

[4]  The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI.  <u>See</u> <u>McDonald v. Sec'y of Health & Human Servs.</u>, 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite to one set of regulations only.  <u>See</u> <u>id.</u>

in the national economy that the applicant can still perform."
Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since January 1, 2004, the
alleged onset date, (R. at 13); that Plaintiff's degenerative disc
disease of the back and degenerative joint disease of the right
shoulder and knee constituted severe impairments, (id.); that
Plaintiff did not have an impairment or combination of impairments
which met or medically equaled one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1, (R. at 14); that Plaintiff
retained the residual functional capacity ("RFC") to perform a wide
range of sedentary work which would not require him to work above
shoulder level, which limited him to uncomplicated work tasks, and
which required a work break every two hours, (id.); that
Plaintiff's medically determinable impairments could reasonably be
expected to produce some symptoms of the type alleged, but that his
statements concerning the intensity, persistence, and limiting
effects of those symptoms were not entirely credible, (R. at 17);
that Plaintiff was unable to perform any past relevant work, (R. at
19); that, considering his age, education, work experience, and
RFC, there were jobs which existed in significant numbers in the
national economy which Plaintiff could perform, (id.); and that

7

Plaintiff had not been under a disability, as defined in the Act, from January 1, 2004, the amended onset date, through the date of the ALJ's decision, (R. at 20).

## Error Claimed

Plaintiff alleges that, while the ALJ referenced the opinions of Plaintiff's treating specialist, Dr. Christopher Huntington, the ALJ failed to comply with 20 C.F.R. § 404.1527 by not according adequate weight to the opinions and, further, not providing "good reasons" for his rejection of the opinions.

## Discussion

As noted above, Plaintiff challenges the weight the ALJ afforded to Dr. Huntington's opinions as well as the reasons given by the ALJ for that weight. See Plaintiff's Memorandum in Support of Plaintiff's Motion to Remand for a Rehearing of the Commissioner's Final Decision ("Plaintiff's Mem.") at 5. Specifically, Plaintiff argues that the ALJ failed to evaluate properly a Physical Capacity Evaluation, a Medical Questionnaire, and a Pain Questionnaire, all dated May 10, 2007, see id., and a letter signed by Dr. Huntington dated December 19, 2007, see id. at 6. Plaintiff further contends that if the ALJ had doubts regarding the December 2007 letter, the ALJ should have recontacted Dr. Huntington. See id. at 7.

Evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527. Section 404.1527(d) provides in relevant part that:

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be
> the medical professionals most able to provide a
> detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations. If we find that
> a treating source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight. When we do not give the treating
> source's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this
> section, as well as the factors in paragraphs (d)(3)
> through (d)(6) of this section in determining the weight
> to give the opinion. We will always give good reasons in
> our notice of determination or decision for the weight we
> give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) (2011); see also Social Security Ruling

("SSR") 96-2p, 1996 WL 374188, at *2 (S.S.A.)("It is an error to

give an opinion controlling weight ... if it is not well-supported

by medically acceptable clinical and laboratory techniques or if it

is inconsistent with the other substantial evidence in the case

record."). In evaluating medical opinions, an ALJ is directed to

consider the existence of an examining relationship, the existence

of a treating relationship, the length, nature, and extent thereof,

the supportability of an opinion, the consistency of an opinion

with the record as a whole, the specialization of the source, and

any other factors which the claimant brings to the adjudicator's

attention. See 20 C.F.R. § 404.1527(d)(2)-(6). Section

404.1527(e) further provides that:

Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity ..., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (e)(1) and (e)(2) of this section.

20 C.F.R. § 404.1527(e).

The Court initially notes that the ALJ thoroughly summarized the evidence from Dr. Huntington as well as the other medical evidence in the record. (R. at 15-17) Regarding the questionnaires from Dr. Huntington, the ALJ stated:

A May 10, 2007, form by Dr. Huntington diagnosed pain from shoulder arthritis and degenerative disc disease

with an L3-4 herniated nucleus pulposus that moderately severely impaired attention, concentration, and productivity. He also assessed shoulder arthritis/labral tears, an L3-4 herniated nucleus pulposus with lumbar degenerative disc disease, and pes anserine bursitis with moderate to severe pain, numbness, weakness, and crepitus that precluded work. He opined the claimant could sit for 1 hour, stand for 30 minutes, and walk for 1 hour at a time; work for three hours in an 8-hour workday; frequently lift 5 pounds; occasionally lift 5 pounds and carry 10; occasionally perform simple grasping and fine manipulation but no reaching, pushing, pulling, or over-the-shoulder work; and occasionally operate leg/foot controls and be exposed to dust, fumes, and gases but never unprotected heights, moving machinery, noise, vibration or extreme temperatures.

(R. at 16)(internal citation omitted). The ALJ, however, found that:

> While Dr. Huntington assessed a moderately severe impairment in attention, concentration, and productivity with an inability to work due to back and shoulder issues that limited him to less than sedentary exertion, the examination and radiology findings do not support this level of limitation. Therefore, his assessment is given limited weight as it is inconsistent with the record.

(R. at 18) Thus, the ALJ found Dr. Huntington's assessment, as reflected in the May 10, 2007, questionnaires, to be both unsupported by and inconsistent with the record.

As noted above, 20 C.F.R. § 404.1527(d) directs the ALJ to consider the supportability of an opinion as well as the consistency of an opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). The Court's review of the record reveals that the ALJ could reasonably have concluded that "the examination and radiology findings ...," (R. at 18), did not support the level of limitation opined by Dr. Huntington, see

11

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("We must uphold the [Commissioner]'s findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

The ALJ summarized the examination and radiology findings as follows:

> [Plaintiff] did [not] seek any treatment until February 3, 2004, for a January 30, 2004, motor vehicle accident that he stated caused back pain that he treated with over-the-counter Tylenol and then had no other treatment until June 22, 2006, when he began reporting low back pain, bilateral shoulder pain, and knee pain. Examinations revealed a normal gait, intact gross motor coordination, full cervical range of motion without atrophy or pain, no shoulder girdle pain, limited thoracolumbar range of motion with pain but no atrophy, full extremities range of motion without pain, 5/5 strength, negative straight leg raising, intact sensation, symmetric shoulder range of motion, 4-5/5 rotator cuff strength, and an intact neurologic exam. Further, thoracic and lumbosacral x-rays in 2004 were negative and imaging studies in 2006 revealed a normal lumbar MRI except for L3-4 degenerative spine disease with a bulging disc but no stenosis; a normal right knee; and an unremarkable left foot.

(R. at 18)[5]  Elsewhere, the ALJ stated that "[a] June 29, 2006,

_____

[5] The ALJ further noted that Plaintiff

> informed [Jay M.] Burstein[, M.D.,] that his back pain lasted a week per episode and occurred every month or so, which evidences that his condition was not constant.  Persistent adverse side effects of medications, which would preclude the performance of sustained competitive work over a normal workday, in the positions described by the impartial vocational expert, have not been established.

(R. at 18)  The VE testified that a hypothetical claimant of the same age, education, and work background and with the same RFC as Plaintiff could perform jobs such as assembler, table worker, and inspector.  (R. at 48-49)

right shoulder MRI evidenced an extensive labral tear and glenoid chondromalacia with no rotator cuff tear. A left shoulder MRI revealed no rotator cuff tear and a 4mm loose body in the subcoracoid recess." (R. at 15)(internal citation omitted). Based on its review of the record, the Court finds the ALJ's summary to be accurate.

Moreover, "[w]hen a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." Coggon v. Barnhart, 354 F.Supp.2d 40, 51 (D. Mass. 2005)(quoting Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000, at *3 (1st Cir. June 9, 1994))(alteration in original); see also Ormon v. Astrue, Civil Action No. 10-10017-NMG, 2011 WL 2559040, at *5 (D. Mass. June 14, 2011)("A treating physician's opinion is only entitled to controlling weight when it is 1) medically well-supported and 2) not inconsistent with other substantial evidence in the record."). Dr. Huntington's appraisal is at odds with other evaluations in the record.

For example, Jay M. Burstein, M.D., who performed a consultative examination of Plaintiff on September 11, 2006, with regard to functional limitations stated: "I would recommend a 35-40 pound lifting restriction on a regular basis. No repetitive overhead activities involving the right shoulder. I find no functional limitations with regards to fine motor coordinated

activity, bending, twisting, walking, and climbing." (R. at 192)
Dr. S. Green completed a Physical Residual Functional Capacity
Assessment dated October 10, 2006, (R. at 193-200), which was
affirmed by Edward Hanna, M.D., on December 19, 2006, (R. at 208,
217). Dr. Green found Plaintiff capable of: occasionally lifting
up to 50 pounds and frequently up to 25 pounds; sitting, standing,
and/or walking, with normal breaks, for about 6 hours in an 8-hour
workday; pushing and/or pulling, including operation of hand and
foot controls, on an unlimited basis; and occasionally climbing
ladders, ropes, or scaffolds and frequently climbing ramps or
stairs, balancing, stooping, kneeling, crouching, and crawling.
(R. at 194-96) Dr. Green further found Plaintiff limited in
reaching with his right upper extremity but unlimited in handling,
fingering, and feeling. (R. at 196) No visual, communicative, or
environmental limitations were established. (R. at 196-97)
Finally, according to Ms. Madsen, PA, Plaintiff's primary care
provider, Plaintiff was able to sit for 3 hours, stand for 2 hours,
walk for 1 hour, and work for 3 hours; frequently lift and carry up
to 5 pounds, occasionally lift and carry up to 20 pounds, and never
lift and carry anything over 20 pounds; frequently use his left arm
and hand for simple grasping and occasionally his right, frequently
use his left arm and hand for fine manipulation and occasionally
his right, and occasionally use his left arm/hand for reaching,
pushing and pulling, and over the shoulder work, but never his

14

right; occasionally bend, squat, and kneel but never crawl; and occasionally be exposed to unprotected heights and moving machinery, but never be exposed to noise and vibration, extreme temperatures, and dust, fumes, and gas. (R. at 250) She rated Plaintiff's symptoms as severe, (R. at 248), indicated that his pain was of such severity as to result in a moderately severe reduction in attention, concentration, and productivity in a competitive work setting, (R. at 249), and opined that he could not sustain competitive employment on a full-time, ongoing basis, (R. at 248).

Thus, while there is some similarity between Dr. Huntington's assessment and that of Ms. Madsen, the other evaluations are far less restrictive. The resolution of conflicts in the evidence is the ALJ's responsibility. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts.")(citing Rodriguez, 647 F.2d at 222); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1ˢᵗ Cir. 1987) ("Conflicts in the evidence are, assuredly, for the [Commissioner]--rather than the courts--to resolve.")(citing, *inter alia*, Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971)).

Further, the ALJ's independent RFC determination strikes a balance between the extremely restrictive assessments of Dr. Huntington and, to a lesser extent, Ms. Madsen, and the less

restrictive evaluations of Drs. Burstein, Green, and Hanna.  The
ALJ found that Plaintiff could perform a wide range of sedentary
work, with a restriction on work above shoulder level, a limitation
to uncomplicated work tasks, and a requirement that he be allowed
to take a work break every two hours, (R. at 14), thereby
accommodating his inability to reach overhead with his right arm,
his limited ability to concentrate, and his need to move around.

In addition, the ALJ was not required to accept Dr.
Huntington's opinion that Plaintiff was unable to work.  <u>See</u> 20
C.F.R. § 404.1527(e); <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932
F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the
conclusions of claimant's treating physicians on the ultimate issue
of disability."); <u>see also</u> <u>Rodriguez</u>, 647 F.2d at 222 ("[T]he
resolution of conflicts in the evidence and the determination of
the ultimate question of disability is for [the Commissioner], not
for the doctors or for the courts."); <u>cf.</u> SSR 96-5p, 1996 WL
374183, at *2 (S.S.A.)(noting that "treating source opinions on
issues that are reserved to the Commissioner are never entitled to
controlling weight or special significance" because that "would, in
effect, confer upon the treating source the authority to make the
determination or decision about whether an individual is under a
disability, and thus would be an abdication of the Commissioner's
statutory responsibility to determine whether an individual is
disabled").

The ALJ also noted that there were "gaps in the medical treatment ...," (R. at 18), and that "Dr. Huntington's notes reflect that he told [Plaintiff] that [he] did not need to return for up to four months at a time ...," (id.); see also (R. at 222) (stating that Dr. Huntington would see Plaintiff "back in 4 to 6 months"). This is a valid factor for the ALJ to consider. See Irlanda Ortiz, 955 F.2d at 769 (viewing gaps in medical record as "evidence").

In addition, the ALJ observed that Plaintiff took mainly over-the-counter medications, with a recent addition of prescription Percocet for sleep. (R. at 18); cf. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2nd Cir. 1983)(noting, in addressing plaintiff's claim of severe headaches, that "there is evidence in the record that Bufferin [an over-the-counter medication] helped to relieve the pain"). This is reflected in the notes of both Dr. Huntington and Ms. Madsen. (R. at 211)(indicating that Plaintiff took "[o]ver-the-counter pain medication unspecified"); (R. at 222)("He is taking Percocet and Motrin from his primary care physician."); (R. at 229)("Uses Ibuprofen during day and Percocet in PM").

Further, as the ALJ recognized, (R. at 18), Dr. Huntington treated Plaintiff conservatively, noting that in the past his symptoms had improved with conservative care, (R. at 212), recommending physical therapy for his shoulder and epidural steroid

injections for his lumbar spine,[6] (R. at 210), indicating that he
would continue with physical therapy, (R. at 246), and stating that
"[f]or now we will continue with current care," (R. at 222), and
that Plaintiff would "continue getting medications from his primary
care physician as there is nothing surgical to offer him at this
point," (id.).  The ALJ could reasonably have inferred that Dr.
Huntington's conservative treatment and instruction to Plaintiff to
return in "4 to 6 months," (R. at 222), "do[] not reflect treatment
consistent with the level of pain and limitation alleged by the
claimant," (R. at 18), or reflected in Dr. Huntington's assessment,
(R. at 218-21); see also Rodriguez, 647 F.2d at 222 ("the drawing
of permissible inference from evidentiary facts [is] the prime
responsibility of the [Commissioner]").

    As for the December 19, 2007, letter, the ALJ observed that:

      Exhibit 21F, submitted into evidence after the hearing,
    is a letter signed by Dr. Huntington.  Review of this
    exhibit allows an inference that it was authored by the
    claimant's disability attorney and merely signed by Dr.
    Huntington ....  The letter itself presents as far more
    of  an  advocacy  statement  than  a  medical  report.
    Moreover, the conclusions presented are at some odds with
    Dr. Huntington's own medical records.  The statement at
    Exhibit 21F is given diminished evidentiary weight.

(R. at 18 n.1)  Plaintiff concedes that counsel drafted the letter,

which Dr. Huntington subsequently signed.  See Plaintiff's Mem. at

6, 7.  Plaintiff maintains, however, that:

_____

    [6] Dr. Huntington subsequently reported that Plaintiff had "had no
epidural steroid injections as he does not really like needles."  (R. at
209)

> [T]here is no reason to believe that the limitations
> outlined did not accurately reflect Dr. Huntington's
> opinion. The limitations outlined in the letter are
> nearly identical to those recited by Dr. Huntington in
> his previous opinion, dated May 10, 2007, which was
> drafted and signed by Dr. Huntington, without the aid of
> [Plaintiff]'s counsel. This is the opinion of a treating
> specialist, who has examined the claimant, performed
> objective testing, and treated the claimant's medical
> issues, and this detailed function-by-function assessment
> has essentially been ignored.

Id. at 7.

To the extent that Plaintiff contends that the Court should find error because the ALJ characterized the letter as "an advocacy statement," (R. at 18 n.1), the Court is not so persuaded. See Coggon, 354 F.Supp.2d at 53 (stating that it was not unreasonable for the hearing officer to find doctor's opinion one of "advocacy"); id. at 56 (noting that "the hearing officer did not reject or ignore the opinion of [the doctor]; he simply found it an advocacy opinion and deserving of less weight given the weight of the record to the contrary"). Here, Plaintiff's counsel "requested [the] additional information ...," (R. at 308), and wrote the letter, see Plaintiff's Mem. at 6, 7, although Dr. Huntington ultimately signed it, (R. at 309). The letter, while purporting to "clarify" Dr. Huntington's May 10, 2007, opinion (which limitations, according to the letter, were still in effect), actually is more restrictive than the May 10, 2007, questionnaires. Compare (R. at 218-21) with (R. at 308-09). For example, nowhere in the May 10, 2007, questionnaires, (R. at 218-21), does Dr.

Huntington state that Plaintiff "may need to lie down for up to 2 hours per day," (R. at 309), due to his back pain, (id.).

Even if the ALJ should have considered the letter as a medical report as opposed to an advocacy statement, (R. at 18 n.1); see also Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987)("Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them."), an ALJ's decision "can still pass muster if the other reasons given to accord medical reports little weight are adequately supported," Arroyo v. Barnhart, 295 F.Supp.2d 214, 221 (D. Mass. 2003)(citing Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); Gonzalez Perez, 812 F.2d at 749). Here, the ALJ offered another reason for affording Dr. Huntington's letter little probative weight, namely that "the conclusions presented are at some odds with Dr. Huntington's own medical records." (R. at 18 n.1) Dr. Huntington's office notes do not reflect the extreme restrictions on use of Plaintiff's upper extremities which appear in the December 19, 2007, letter. (R. at 209-12, 222, 245-46, 308-09) In addition, the closest Dr. Huntington comes to suggesting that as a result of Plaintiff's back pain he might need to lie down for up to 2 hours a day is a notation on June 22, 2006, that his pain "is relieved with lying supine ...." (R. at 211) Thus, the ALJ's statement that "the conclusions presented [in the December 19,

2007, letter] are at some odds with Dr. Huntington's own medical records," (R. at 18 n.1), finds support in the record.

Finally, the Court rejects Plaintiff's contention that the ALJ was required to recontact Dr. Huntington.  <u>See</u> Plaintiff's Mem. at 7-8.  The regulation which Plaintiff cites, 20 C.F.R. § 404.1512, provides in relevant part that:

> **When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled,** we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  ...
>
> > ....

20 C.F.R. § 404.1512(e)(1) (2011) (bold added); <u>see also</u> <u>Colon v. Chater</u>, 187 F.3d 621, 1998 WL 1085796, at *1 (1st Cir. Sept. 30, 1998)(table decision, text in Westlaw)("Under the Ruling, the ALJ was required to [recontact plaintiff's doctor] only if he could not 'ascertain the basis of the opinion from the case record.'  The record contained a questionnaire, filled out by Dr. Hirsch in July

1995, which stated the basis for his opinion that the appellant was disabled."); Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *11 (D. Me. May 7, 2004)("As a threshold matter, these regulations impose a duty to recontact a treating physician only when the record is inadequate to make a determination of disability.").

"As the Tenth Circuit has explained, 'it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ received from the claimant's treating physician that triggers the duty.'" Landry v. Astrue, Civil Action No. 06-30220-KPN, 2007 WL 4378161, at *5 (D. Mass. Dec. 7, 2007)(quoting White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001)). Clearly the ALJ believed he had adequate evidence on which to base his decision. The Court agrees. The record contains five exhibits from Dr. Huntington, including office notes, the May 10, 2007, questionnaires, and the December 19, 2007, letter. (R. at 209-15, 218-22, 245-46, 308-09) The fact that Plaintiff disagrees with the reasons the ALJ gave for affording the December 19, 2007, letter "diminished weight," (R. at 18 n.1), does not render the evidence received from Dr. Huntington "inadequate ... to determine whether [Plaintiff is] disabled," 20 C.F.R. § 404.1512(e), thereby requiring the ALJ to recontact Dr. Huntington. See Ormon, 2011 WL 2559040, at *6 ("[T]he abundance of treatment notes from Dr. Ross in the record make the reasons for his opinion sufficiently clear

and, therefore, the ALJ did not have an obligation to contact Dr.
Ross personally for an explanation.").

## Summary

The Court finds that the ALJ properly evaluated Dr.
Huntington's opinions, gave good reasons for deciding to afford
them limited weight, and was under no obligation to recontact the
doctor. Accordingly, Plaintiff's claim of error should be
rejected. I so recommend.

## Conclusion

The Court finds that the ALJ's determination that Plaintiff is
not disabled within the meaning of the Act is supported by
substantial evidence in the record and is legally correct.
Accordingly, I recommend that Defendant's Motion to Affirm be
granted and that Plaintiff's Motion to Remand be denied.

Any objections to this Report and Recommendation must be
specific and must be filed with the Clerk of Court within fourteen
(14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv
72(d). Failure to file specific objections in a timely manner
constitutes waiver of the right to review by the district court and
of the right to appeal the district court's decision. See United
States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor
Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
January 5, 2012